Ardella CHESSEN, Plaintiff,

v.

AMERICAN REGISTRAR AND TRANSFER CO., Defendant.

No. Civ. 3–96–1208/RHK/FLN.

United States District Court, D. Minnesota, Third Division.

May 22, 1998.

Charles S. Clayton, Clayton Law Office, Minneapolis, MN, for plaintiff.

Jarett B. Decker, Maun & Simon, Saint Paul, MN, for defendant.

**1.** ALPD was formerly known as Medipak Corporation. (Day Aff. ¶ 4.)

**2.** While Chessen initially owned 375,000 shares of ALPD stock, ALPD underwent a 1–for–8 reverse split in 1995, leaving Chessen with 46,875 shares. (Day Aff. ¶ 5.)

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiff Ardella Chessen ("Chessen") filed the instant action against Defendant American Registrar and Transfer Co. ("ARTCO"), alleging that ARTCO wrongfully refused to transfer certain shares of stock she owned. ARTCO contends that this Court lacks subject matter jurisdiction over Chessen's claims. Currently before the Court is ARTCO's Motion for Summary Judgment. For the reasons stated below, the Court will grant the Motion.

### Background

ARTCO is a transfer agent, which contracts with corporations to maintain records of their registered shareholders and to handle transfers of shares of their stock when such transfer is requested and would be appropriate. (Day Aff. ¶ 3.) ARTCO has been the transfer agent for Advanced Laser Products, Inc. ("ALPD")[1] since the end of 1994. (*Id.* ¶ 4.) Chessen, during the time period relevant to this lawsuit, was the owner of 46,875 shares of ALPD stock.[2] (*Id.* ¶ 5; Eugene Chessen Aff. ¶ 4.)

In 1995, ALPD issued 9,513,949 shares of its common stock to shareholders of a Nevada corporation, ALPN, as a result of which ALPN became a subsidiary of ALPD. (Day Aff. ¶ 6.) As a result of this transaction, ALPD instructed ARTCO that the newly issued ALPD shares were to be "restricted," as defined in SEC Rule 144(a)(3).[3] (*Id.*) ARTCO, therefore, placed on all ALPD stock certificates a standard "restrictive legend," which read:

THE SHARES OF STOCK REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (AS AMENDED "THE ACT") OR ANY STATE SECURITIES LAW, AND MAY

**3.** SEC Rule 144 provides that, with regard to "restricted" securities, a certain minimum period of time must elapse after their acquisition from the issuer before they can be resold to a third party. *See* 17 C.F.R. 230.144(d)(1).

NOT BE TRANSFERRED OR SOLD UNLESS REGISTERED UNDER THE ACT (AND ANY APPLICABLE STATE LAW) OR UNLESS AN EXEMPTION FROM SUCH REGISTRATION PROVISION IS AVAILABLE (THE ISSUER MAY AT ITS OPTION REQUIRE THAT AVAILABILITY OF AN EXEMPTION BE ESTABLISHED BY AN OPINION OF COUNSEL WHICH IS SATISFACTORY TO THE ISSUER).

(*Id.*) On June 19, 1995, ARTCO issued a stock certificate representing 46,875 shares of ALPD stock and bearing the above restrictive legend to "Hamilton Investments, Inc. c/f Ardella Chessen." (*Id.* ¶ 8.) On December 22, 1995, because the original had been lost, ARTCO issued a replacement certificate to Chessen representing the same number of shares; this replacement certificate bore the same restrictive legend as the original. (*Id.* ¶ 10.)

In May 1996, the Chicago Corporation, acting apparently as a clearing agent for Chessen's broker, requested that ARTCO remove the restrictive legend from 9,000 of Chessen's 46,875 shares of ALPD stock. (Day Aff. ¶ 11.) The Chicago Corporation requested that the restrictive legend be left on the remaining shares. (*Id.*) ARTCO, believing that the removal of the restrictive legend would be inappropriate under the applicable law, refused to remove the restrictive legend from any of the shares. (*Id.* ¶¶ 12–14.)

The parties disagree on the value of the shares at the time of the requested transfer. Chessen contends that, at the time of the attempted transfer, ALPD stock was worth approximately $6.00 per share. (Eugene Chessen Aff. ¶ 4.) ARTCO, however contends that the value of the stock at that time was between $4.00 and $5.00 per share. (Day Aff. ¶ 15 & Ex. I.) At the time Chessen filed her Complaint, the stock was worth between $1.00 and $2.00 per share. (*Id.* ¶ 16–17 & Ex. J.)

## Analysis

### A. Standard of Review

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court views the evidence and the inferences which may be reasonably drawn from it in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir.1996); *see also Adkison v. G.D. Searle & Co.,* 971 F.2d 132, 134 (8th Cir. 1992). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank,* 92 F.3d at 747; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party must demonstrate the existence of specific facts which create a genuine issue for trial; mere allegations or denials are not enough. *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514; *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Ordinarily, the court does not weigh facts or evaluate the credibility of affidavits and other evidence on a motion for summary judgment. The nonmovant cannot, however, avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome determinative under prevailing law," that is, it must be material to an essential element of the specific theory of recovery at issue. *See Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992). Essentially, the court performs the threshold inquiry of determining whether there is a need for a trial. *Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. at 2510.

### B. Federal Question Jurisdiction

ARTCO contends that this Court lacks subject matter jurisdiction over Chessen's claim because her Complaint presents no federal question. (*See* Def.'s Mem. in Supp. of Summ. J. at 7–9) ("Def.'s Supp. Mem.") Chessen responds that "[t]he dispute in this case is whether or not the Plaintiff has satisfied Rule 144 [of the Securities and Ex-

change Commission], which is a federal question." (Mem. in Opp'n to Mot. for Summ. J. at 3) ("Pl.'s Opp'n Mem.")

Without regard to the citizenship of the parties or the amount in controversy, a federal court has jurisdiction over any civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1998). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint' rule." *Oklahoma Tax Comm'n v. Graham,* 489 U.S. 838, 840, 109 S.Ct. 1519, 1521, 103 L.Ed.2d 924 (1989). "[W]hether a case is one arising under [federal law], in the sense of the jurisdictional statute ..., must be determined from what necessarily appears in the plaintiff's statement of his own claim ..., unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914); *see also Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983) ("[A] federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, or that a federal defense is not sufficient to defeat the claim.") (citations omitted).

In the instant case, Chessen alleges that ARTCO wrongfully refused to transfer shares of stock that she owned. (*See* Compl. ¶¶ 7, 12.) In her Complaint, she states that "[t]his case arises under the Securities Act of 1933, 15 U.S.C. 77a et seq...." (*Id.* ¶ 4.) She further contends that "under the provisions of Rule 144 of the Securities and Exchange Commission the plaintiff, since she had held the ... shares for more than three years, was entitled to sell her shares." (*Id.* ¶ 9.)

A cause of action for the wrongful refusal to transfer stock arises under state, rather than federal, law, notwithstanding the fact that regulations of the Securities and Exchange Commission and federal law is likely to be implicated. *See Dewitt v. American Stock Transfer Co.,* 433 F.Supp. 994, 1000 (S.D.N.Y.1977) (in a diversity case involving an alleged wrongful refusal to transfer stock, court applied state law, stating that the plaintiff's cause of action under the Uniform Commercial Code even though the defendants argued that transfer of the stock could have violated the Securities Act of 1933, *amended on other grounds,* 440 F.Supp. 1084 (S.D.N.Y.1977); *see also Kenler v. Canal Nat'l Bank,* 489 F.2d 482, 485 (1st Cir.1973); *Donnelly v. Power Tech Sys., Inc.,* No. 90 CV 1997 (TCP), 1991 WL 158973, *2 (E.D.N.Y.1991); *Kanton v. United States Plastics, Inc.,* 248 F.Supp. 353, 359 (D.N.J. 1965). In *Kanton,* the court held that it did not have federal question jurisdiction over the plaintiff's claim of wrongful refusal to transfer stock, stating:

> If this Court has jurisdiction in this case, it must be based on diversity of citizenship and amount in controversy. There appears to be no basis in fact to support a claim of federal question jurisdiction, or jurisdiction under the Securities Acts of 1933 and 1934. Essentially, what is involved here is a dispute concerning plaintiff's right to have his stock transferred on the books of [the defendant]. This rights and liabilities of the parties to this transaction are to be measured by state, rather than federal, law. Plaintiff's claim, realistically viewed, is not related to, and does not arise under, the Securities Acts.

*Kanton,* 248 F.Supp. at 359. Chessen has not distinguished *Kanton* or the other above cases in any meaningful way, and has directed this Court to no cases in which a court has held that an allegation of wrongful refusal to transfer stock presents a federal question. Accordingly, the Court finds that Chessen's claim does not arise under federal law. If subject matter jurisdiction exists, therefore, it must be based on diversity jurisdiction.

### C. Diversity Jurisdiction

ARTCO contends that Chessen's claim does not satisfy the "minimum amount in controversy" requirement for federal diversity jurisdiction. (*See* Def.'s Supp. Mem. at 9–11; Reply Br. in Supp. of Mot. for Summ. J. at 7–9 ("Def.'s Reply Mem.").) Chessen responds that, because she owned a total of 46,875 shares, and "the intention" was ultimately to sell all of the shares, rather than just the 9,000 shares immediately at issue,

and because the value of the shares at the time of her request to transfer them was approximately six dollars, the total amount in controversy is in excess of $200,000, satisfying the "minimum amount in controversy" requirement. (*See* Pl.'s Opp'n Mem. at 3; Eugene Chessen Aff. ¶ 4.) The Court finds that the amount in controversy in the instant case does not satisfy the "minimum amount in controversy" requirement and, therefore, this Court has no diversity jurisdiction over Chessen's claim.

■ Without regard to whether a particular claim arises under federal law, federal courts have original jurisdiction over any civil action in which there is both complete diversity of citizenship among the parties and "the matter in controversy exceeds the sum or value of $75,000,[4] exclusive of interest and costs." 28 U.S.C. § 1332 (1998). The issue of the jurisdictional minimum may not be waived and may be raised by either party, or by the court, at any time. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.) (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982)), *cert. denied*, 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995). Where the defendant challenges the legitimacy of the plaintiff's alleged amount in controversy, "the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." *Missouri v. Western Surety Co.*, 51 F.3d 170, 173 (8th Cir.1995). If the party invoking federal jurisdiction fails to meet that burden, the court will dismiss the action. *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)). In determining the jurisdictional amount, a court takes into account the amount in controversy at the time of the filing of the complaint. *See* 15 James Wm. Moore, *Moore's Federal Practice* § 102.104, at 102–164 to 102–165 (3d ed.1998).

■ In the instant case, ARTCO has presented uncontradicted evidence that Chessen's transfer agent, the Chicago Corpora-

tion, asked ARTCO to remove the restrictive legend from 9,000 of her shares. (Day Aff. Ex. F–2.) The requests to ARTCO unambiguously instruct it to "PLEASE REMOVE RESTRICTION" as to 9,000 shares and "PLEASE LEAVE RESTRICTION" as to 37,875 shares. (*Id.*) Chessen argues that she intended to sell all 46,875 shares, and that ARTCO's refusal to remove the restrictive legend, therefore, resulted in harm to her of over $200,000. (*See* Pl.'s Opp'n Mem. at 3.) There is no evidence, however, that Chessen or her agent ever communicated this intention to ARTCO. Chessen's husband has submitted an affidavit stating: "It was the intention to sell all 46,875 shares of Advanced Laser Products stock, and I relayed this intention [to] Shepherd Financial Group." (Eugene Chessen Aff. ¶ 4.)[5] She also relies upon a copy of a "Notice of Proposed Sale of Securities" filed pursuant to SEC Rule 144, in which she lists all of her shares in the column entitled, "Number of Shares and Other Units To Be Sold." (Day Aff. Ex. G.) She has submitted no evidence, however, that ARTCO ever learned of her intention to sell all 46,875 shares, or that any request was made of ARTCO to remove the restrictive legend as to more than 9,000 shares. Similarly, Chessen's evidence that her transfer agent, the Chicago Corporation, sent confirmations of sale to her purporting to confirm the sale of 11,000 shares is not relevant to this determination. (*See id.*) Chessen has offered no evidence to contradict ARTCO's evidence that the only request it received concerned 9,000 shares. The Court finds, therefore, that Chessen's claim against ARTCO is for wrongful refusal to transfer 9,000 shares of ALPD stock.

Having determined the number of shares in question, the Court must now turn to the question of their value. According to Chessen, the shares were each worth approximately $6.00 per share at the time of the attempted transfer. (*See* Compl. ¶ 3; Eugene Chessen Aff. ¶ 4.) ARTCO contends that, at the time of the attempted transfer,

---

4. ARTCO concedes that, at the time Chessen filed her Complaint, the statutory minimum amount in controversy was $50,000. (Def.'s Supp. Mem. at 10–11.)

5. While Chessen does not identify who Shepherd Financial Group is, the Court assumes that this was Chessen's broker, who in turn contacted the Chicago Corporation to effect the transfer of shares. (*See* Eugene Chessen Aff. ¶¶ 4–5.)

ALPD stock was trading at between $4.00 and $5.00 per share. (*See* Day Aff. ¶ 15 & Ex. I.) At the time of the filing of Chessen's Complaint, ALPD stock was worth between $1.00 and $2.00 per share. (*Id.* ¶¶ 16–17 & Ex. J.) Viewing the evidence in the light most favorable to Chessen, therefore, and drawing all reasonable inferences in her favor, the Court finds that the value of ALPD stock declined in value from $6.00 per share at the time of the requested transfer to $1.00 per share at the time of the filing of Chessen's Complaint. This five-dollar drop in value, multiplied by the 9,000 shares in question, leads this Court to conclude that the amount in controversy in the instant case is, at most $45,000. Accordingly, the Court finds that Chessen's claim fails to satisfy the "minimum amount in controversy" requirement of 28 U.S.C. § 1332, and this Court, therefore, lacks subject matter jurisdiction over the instant claim.

### Conclusion

For the foregoing reasons, and based upon all of the files, records and proceedings herein, **IT IS ORDERED** that the Defendant's Motion for Summary Judgment (Doc. No. 19) is **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**